UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
UNITED STATES OF AMERICA,

        v.                                            **MEMORANDUM & ORDER**
                                                  17-CR-635 (WFK)

RAUON GORDON,

                           Defendant.
-----------------------------------------------------------X

**WILLIAM F. KUNTZ, II, United States District Judge:**

On April 20, 2018, Rauon Gordon ("Defendant") pled guilty to a lesser-included offense of the Indictment. The Court now sentences him and provides a complete statement of reasons pursuant to 18 U.S.C. § 3553(c)(2) of those factors set forth by Congress and contained in 18 U.S.C. § 3553(a). For the reasons discussed below, Defendant is hereby sentenced to 63 months of incarceration to run concurrently with any undischarged term of imprisonment resulting from a pending probation violation, 3 years of supervised release, no fine, and a $100.00 special assessment.

## BACKGROUND

On October 5, 2016, the Government filed a Sealed Complaint alleging on or about and between August 2013 and May 2015, Defendant knowingly and intentionally conspired to distribute and possess with intent to distribute a controlled substance containing cocaine base. *See* Compl., ECF No. 1. The same day, the Government sought and obtained a warrant to arrest Defendant. *See* ECF No. 2. On November 15, 2017, the Government filed a motion to designate this case as related to *United States v. Artis et al.*, 15-cr-287, *see* ECF No. 12, which this Court granted, *see* Nov. 17, 2017 Electronic Order.

On November 22, 2017, a Grand Jury returned a one-count Indictment against Defendant alleging Narcotics Trafficking Conspiracy in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A)(iii). *See* Indictment ¶ 1, ECF No. 14. The Indictment also contained a criminal forfeiture allegation. *Id.* ¶¶ 2-3. On April 20, 2018, Defendant pled guilty to a lesser-included offense of the

Indictment, charging a violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), and 846. *See* Plea Agreement ¶ 1, ECF No. 19; Presentence Investigation Report ("PSR") ¶ 1, ECF No. 21.

The Court hereby sentences Defendant and sets forth its reasons for Defendant's sentence using the rubric of the 18 U.S.C. § 3553(a) factors pursuant to 18 U.S.C. § 3553(c)(2).

## DISCUSSION

### I. Legal Standard

18 U.S.C. § 3553 outlines the procedures for imposing sentence in a criminal case. The "starting point and the initial benchmark" in evaluating a criminal sentence is the Guidelines sentencing range. *Gall v. United States*, 552 U.S. 38, 49 (2007). If and when a district court chooses to impose a sentence outside of the Sentencing Guidelines range, the court "shall state in open court the reasons for its imposition of the particular sentence, and . . . the specific reason for the imposition of a sentence different from that described" in the Guidelines. 18 U.S.C. § 3553(c)(2). The court must also "state[] with specificity" its reasons for so departing "in a statement of reasons form[.]" *Id.*

"The sentencing court's written statement of reasons shall be a simple, fact-specific statement explaining why the guidelines range did not account for a specific factor or factors under § 3553(a)." *United States v. Davis*, 08-CR-0332, 2010 WL 1221709, at *1 (E.D.N.Y. Mar. 29, 2010) (Weinstein, J.). Section 3553(a) provides a set of seven factors for the Court to consider in determining what sentence to impose on a criminal defendant. The Court addresses each in turn.

2

## II. Analysis

### A. The Nature and Circumstances of the Offense and the History and Characteristics of the Defendant

The first § 3553(a) factor requires the Court to evaluate "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1).

Defendant, now 26 years old, was born on September 18, 1993 in Georgetown, Guyana. PSR ¶ 35. According to an Immigration and Customs Enforcement database, Defendant immigrated to the United States on December 23, 1996 and is legally residing in the United States as a permanent resident. *Id.* ¶ 39. He is one of two children born to the consensual union of Gussy Gordon and Pearl Reid. *Id.* ¶ 35. Defendant's parents separated when Defendant was young. *Id.* His father resides in Queens, New York and works in construction. *Id.* His mother resides at the address of record in Brooklyn, New York and works as a nurse's aid at a nursing home. *Id.* Defendant advised his mother is a United States citizen, and he believes he is a derivative citizen because of it. *Id.*; *see also* Def. Sentencing Mem. ("Def. Mem.") at 1-2, ECF No. 23.[1] Defendant's mother has expressed support for Defendant in connection with the instant offense. *Id.* ¶ 36. Defendant has one full sibling, one paternal half-sibling, and one maternal

---

[1] Indeed, defense counsel objects to Probation's identification of Defendant as a citizen of Guyana, noting:

> The Probation Department has identified the defendant as a citizen of Guyana. It appears that the defendant is actually eligible for derivative citizenship. He was brought to the United States legally at the age of two. His mother became a United States citizen while the defendant was an infant living with her in the United States. He is legally present in the country and is required to file a form with the U.S. Citizen and Immigration Services to verify his status.

Def. Mem. at 1-2. The Government does not take a position as to Defendant's citizenship status, *see* Gov't Sentencing Mem. ("Gov't Mem."), ECF No. 24, but has requested the Court advise Defendant of the potential immigration consequences of his plea, *see* Gov't Sentencing Suppl., ECF No. 26.

half-sibling, all of whom are aware of Defendant's arrest and conviction and remain supportive. *Id.* ¶ 37.

Defendant's mother raised him in a lower-income household in Brooklyn. *Id.* ¶ 38. Defendant advised his childhood was normal, but he had some "bad times" because he did not have all the material possessions his friends had. *Id.* He noted he always had a place to live and food to eat. *Id.* He added although his mother has always been supportive of him, his father played virtually no role in his childhood. *Id.* Defendant's father did not immigrate to the United States from Guyana until approximately 2013, when he moved to Queens to be with his current wife. *Id.* ¶ 40.

Defendant has resided at the address of record in Brooklyn since immigrating to the United States. *Id.* ¶ 42. Defendant is currently incarcerated at the Metropolitan Detention Center ("MDC") in Brooklyn, where he has participated in an art program. *Id.* ¶ 43. While at the MDC, Defendant has incurred disciplinary infractions for: (1) Refusing to Obey an Order and Being Insolent to a Staff Member; (2) Possessing an Unauthorized Item (cigarettes); and (3) Possessing a Hazardous Tool (unspecified type). *Id.*

Defendant is physically and mentally healthy. *Id.* ¶¶ 45-46. His medical records from the MDC indicate he was diagnosed with astigmatism and myopia, and he has not received mental health treatment. *Id.*

Defendant has a history of substance abuse issues. *Id.* ¶¶ 47-53. Defendant first consumed alcohol at age fifteen, and in his late teens, he consumed three pint-sized bottles of Hennessey daily. *Id.* ¶ 47. Prior to his arrest for the instant offense, Defendant consumed alcohol only twice per month. *Id.* Defendant first smoked marijuana at age thirteen and smoked marijuana daily prior to his arrest for the instant offense. *Id.* ¶ 48. He also used Xanax and

4

Codeine daily for two years prior to his arrest for the instant offense. *Id.* ¶ 50. Defendant received outpatient drug treatment and counseling at an unrecalled facility in Brooklyn for approximately one year in junior high school. *Id.* ¶¶ 52-53.

Defendant attended the ninth and tenth grades at Midwood High School in Brooklyn from 2010 to 2012. *Id.* ¶ 56. He attended an unspecified school while he was held at an unspecified "Juvenile Hall" from 2012 to 2014. *Id.* ¶¶ 38, 55. From 2014 to 2015, Defendant attended the eleventh grade at Thomas Jefferson Civil Rights High School in Brooklyn. *Id.* ¶ 54. He did not provide a reason for his withdrawal from school. *Id.* Defendant advised he was enrolled in special education classes throughout his schooling because of behavioral problems. *Id.* ¶ 57. With respect to Defendant's employment history, Defendant worked in construction for approximately four months for an unrecalled company in 2015 in Brooklyn. *Id.* ¶ 60. He was otherwise financially supported by his mother. *Id.* ¶ 61.

Probation reports Defendant's past convictions as follows: In 2010 in Brooklyn, Defendant was convicted of Unauthorized Use of a Vehicle: Without Owner Consent. *Id.* ¶ 25. In 2015 in Chambersburg, Pennsylvania, Defendant was convicted of Unlawful Possession of Drug Paraphernalia. *Id.* ¶ 26. In 2016 in New York, New York, Defendant was convicted of Possession of a Forged Instrument in the Second Degree; Identity Theft 1: Assume Other's Identity – Commit/Attempt Felony; and Grand Larceny in the Fourth Degree: Value of Property Greater than $1,000.00. *Id.* ¶ 27. In 2017 in Morristown, New Jersey, Defendant was convicted of Aggravated Assault on Law Enforcement (3rd Degree Felony); and Criminal Attempt Hindering – Giving False Information (4th Degree Felony). *Id.* ¶ 28. Defendant denies the 2010 criminal conviction for Unauthorized Use of a Vehicle. Def. Mem. at 2.

Defendant was a member of both the Eight Trey Crips ("Eight Trey") and the Bosses in Business ("BIB"), and an associate of both the Outlaw Gangsta Crips ("OGC") and the Shoota Gang ("SG"). PSR ¶ 4. Members of these organizations engaged in murders, attempted murders, bank fraud, drug trafficking, and robbery, among other criminal acts. *Id.* ¶¶ 2-3. As part of the instant offense, Defendant was a street-level narcotics distributor from August 2013 to May 2015. *Id.* ¶ 9. A cooperating witness provided information about the narcotics trafficking activities of Defendant and other associates of the OGC who were indicted in connection with the related case, *United States v. Artis et al. Id.* ¶ 5. The cooperating witness began selling cocaine base to Defendant—who was a street-level narcotics distributor—in 2015. *Id.* ¶¶ 7, 9. Defendant told the cooperating witness he sold cocaine base in West Virginia. *Id.* ¶ 7.

## B. The Need for the Sentence Imposed

The second § 3553(a) factor instructs the Court to consider "the need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2).

Defendant's sale of illicit narcotics both provided dangerous and illegal drugs to his community and also helped to fund unlawful gang activity. The Court's sentence recognizes the seriousness of Defendant's offense and punishes Defendant accordingly. It seeks to deter this Defendant from further criminal activity and encourages him to sever his ties to the BIB, Eight Trey, OGC, and SG. It also seeks to protect the public from Defendant's conduct. More

6

generally, the Court's sentence sends a message to other gang members that a life of crime carries a risk of punishment that outweighs any potential gains.

### C. The Kinds of Sentences Available

The third § 3553(a) factor requires the Court to detail "the kinds of sentences available" for Defendant. 18 U.S.C. § 3553(a)(3). Defendant pled guilty to a lesser-included offense of the Indictment, charging a violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), and 846. *See* Plea Agreement ¶ 1. Defendant faces a maximum term of imprisonment of 20 years. *See* 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), 846. Defendant also faces a minimum term of supervised release of three years and a maximum term of supervised release of life, *id.*; a maximum fine of $1,000,000.00, *id.*; and a special assessment of $100.00, 18 U.S.C. § 3013. Defendant is statutorily eligible for between one and five years probation because he pled guilty to a Class C felony. *Id.* § 3561(c)(1).

### D. The Kinds of Sentence and the Sentencing Range Established for Defendant's Offenses

The fourth § 3553(a) factor requires the Court to discuss "the kinds of sentence and the sentencing range established for . . . the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines[.]" 18 U.S.C. § 3553(a)(4)(A).

The parties agree the offense level applicable to Defendant is 25. *See* PSR ¶¶ 14-23, 84; Def. Mem. at 2; Gov't Sentencing Mem. ("Gov't Mem.") at 2, ECF No. 24. The appropriate Guideline for violations of 21 U.S.C. § 846 is United States Sentencing Guideline ("USSG") § 2D1.1(a)(5), which instructs the Court to apply the base offense level specified in the Drug Quantity Table set forth in USSG § 2D1.1(c). USSG § 2D1.1(c)(5) provides a base offense level of 30 for the quantity of drugs at issue in the instant case. The parties agree Defendant should

receive a total reduction of five points pursuant to USSG §§ 3E1.1(a)–(b) and 5K2.0, yielding a total offense level of 25. *See* PSR ¶ 84; Def. Mem. at 2; Gov't Mem. at 1-2. The parties also agree Defendant's Criminal History is Category II. *See* PSR Addendum at 1, ECF No. 25; Def. Mem. at 2; Gov't Mem. at 2.

Based on the parties' calculations, the Court expressly finds the appropriate offense level is 25, which, with a Criminal History Category of II, yields a Guidelines imprisonment range of between 63 and 78 months. The Guidelines also recommend a term of supervised release of three years, *see* USSG § 5D1.2(c), a fine of between $10,000.00 and $1,000,000.00, *see* USSG §§ 5E1.2(c)(3), (c)(4), (h)(1), and they further suggest Defendant is ineligible for probation, *see* USSG § 5B1.1, n.2.

Probation recommends a term of imprisonment of 70 months custody to run consecutive to any term of custody imposed on a pending violation of local probation conditions and three years of supervised release, with special conditions. *See* Probation Sentence Recommendation at 1-2, ECF No. 21-1. Defense counsel and the Government recommend a sentence consistent with the Level 25, Criminal History Category II Guidelines range of between 63 and 78 months. Neither the Government nor Defendant take a position in their written submissions as to whether Defendant's term of imprisonment should run consecutive to or concurrent with any term of custody imposed for a purported violation of local probation conditions. At the sentencing hearing, defense counsel recommended Defendant's term of imprisonment should run concurrently with any term of custody imposed for a purported violation of local probation conditions.

### E. Pertinent Policy Statement(s) of the Sentencing Commission

The fifth § 3553(a) factor, requiring the Court to evaluate "any pertinent policy statement . . . issued by the Sentencing Commission," 18 U.S.C. § 3553(a)(5), is not pertinent to Defendant's sentencing.

### F. The Need to Avoid Unwarranted Sentence Disparities

The sixth § 3553(a) factor requires the Court to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6).

This action has been designated related to the action *United States v. Artis et al.*, in which there are twenty-three individual defendants. The Court will craft and has crafted a unique sentence for each defendant. For the reasons stated in this Memorandum and Order, and considering the other six § 3553(a) factors, the Court's sentence avoids unwarranted sentence disparities.

### G. The Need to Provide Restitution

Lastly, the seventh § 3553(a) factor, requiring the Court to touch upon "the need to provide restitution to any victims of the offense," 18 U.S.C. § 3553(a)(7). This factor is not relevant to Defendant's sentence.

## CONCLUSION

A sentence of 63 months of incarceration to run concurrently with any undischarged term of imprisonment resulting from a pending probation violation, 3 years of supervised release, no fine, and a $100.00 special assessment is appropriate and comports with the dictates of § 3553. This sentence is consistent with, and is sufficient but no greater than necessary to accomplish, the purposes of § 3553(a)(2).

The Court expressly adopts the factual findings of the Presentence Investigation Report, barring any errors contained therein, and to the extent it is not inconsistent with this opinion. The Court imposes the special conditions of release proposed by the Probation Department.

**SO ORDERED.**

        s/WFK
HON. WILLIAM F. KUNTZ, II
UNITED STATES DISTRICT JUDGE

Dated: December 3, 2019
       Brooklyn, New York